FILED
2026 Sep-18 PM 01:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) | |
| | ) | **COMPLAINT** |
| **v.** | ) | |
| | ) | |
| **BLUE BELL CREAMERIES, INC.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| **Defendant** | ) | |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of religion and/or retaliation and to provide appropriate relief to Gary Blackshear ("Charging Party"). As alleged with greater particularity below, the United States Equal Employment Opportunity Commission alleges Defendant terminated Charging Party because of his religion and in retaliation for requesting a reasonable accommodation of his religion and opposing a workplace requirement that conflicted with his religious belief.

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section

706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Alabama.

PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendant Blue Bell Creameries, Inc., a Texas corporation, has continuously been doing business in the State of Alabama and the City of Sylacauga, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Charging Party filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On May 19, 2026, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. On July 8, 2026, the Commission issued to Defendant a Notice of Failure of Conciliation.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

12. From about February 10, 2025, to March 7, 2025, Defendant engaged in unlawful employment actions at its Sylacauga, Alabama facility in violation of Sections 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2 and Section 704(a) of Title VII, 42 U.S.C. § 2000e-3.

13. Charging Party is Jewish.

14. Charging Party has a sincerely held religious belief, related to his Jewish faith, that that he should not shave his beard in the way Defendant requested.

15. Charging Party began working for Defendant on August 29, 2019.

16. On or about September 6, 2020, Charging Party was transferred to the fleet maintenance department.

17. Charging Party's job title was body shop technician.

18. Charging Party's duties included, among other things, refurbishing fiberglass parts of Defendant's vehicles.

19. Defendant claims that refurbishing fiberglass parts requires an employee to wear a respirator that completely seals and thus an employee cannot have certain types of facial hair.

20. Charging Party's workday typically started at or around 6 a.m. and ended around 4 p.m.

21. On or about February 10, 2025, Defendant held a respirator training and mask fit test.

22. Despite Defendant's claim that body shop technicians were required to wear respirators while refurbishing fiberglass parts, none of Charging Party's coworkers were required to shave their beards after the February 10, 2025 training and mask fit test.

23. Some of Charging Party's coworkers had similar beards to Charging Party and performed similar tasks requiring respirators.

24. On or about February 12, 2025, Defendant held a make-up respirator training for Charging Party because he was on leave during the February 10, 2025 training.

25. During this training, Charging Party was asked to shave his beard.

26. Charging Party refused to shave his beard and told the safety coordinator leading the training that he would not do so because of his religious beliefs.

27. The safety coordinator said Charging Party would have to shave his beard anyway and that it did not matter that he is Jewish, since the Occupational Safety and Health Administration (OSHA) was "above that."

28. The safety coordinator pantomimed quotation marks with his fingers when he said that Charging Party is "Jewish," which Charging Party took as an indication that safety coordinator did not believe that Charging Party is Jewish.

29. After this exchange, Charging Party continued to work and was required to do other tasks that did not require a respirator.

30. Charging Party's relations soured with the fleet manager after Charging Party asked for a religious accommodation and refused to shave his beard.

31. Approximately two weeks later, on or about February 28, 2025, Charging Party had a meeting with the fleet manager and the plant manager.

32. During the meeting referenced in paragraph 31, the plant manager stated that Charging Party's refusal to shave his beard caused a big issue and/or big problem. The plant manager further stated that Defendant's lawyers had advised that Charging Party must be accommodated with a mask that would fit over his beard.

33. According to Defendant, its safety coordinator ordered a PAPR PPE mask and filter for Charging Party on February 27, 2025, and Defendant received the mask on or about March 17, 2025, after Charging Party was terminated.

34. Defendant fired Charging Party on March 7, 2025, and has stated that it did so for "theft of company time" after Charging Party left the premises twice, without permission or clocking out, as shown by his timecard.

35. On March 6, 2025, Charging Party left his duty station at 7:37 a.m. and returned at 7:55 a.m. with food for his co-workers.

36. Charging Party left his duty station again at 7:56 a.m. and returned at 8:03 a.m. Charging Party left the second time to drop off food to his son at his house a few blocks away from the worksite.

37. On March 7, 2025, Defendant terminated Charging Party for theft of company time.

38. Briefly leaving the work premises while on the clock was a common practice within the fleet maintenance department, and the fleet manager knew about it.

39. Specifically, brief on-the-clock errands like getting breakfast for the work group were commonplace, as the fleet manager knew.

40. Prior to Charging Party's termination, the fleet manager sometimes verbally admonished another body-shop technician for leaving the premises while on the clock but did not fire workers for that violation.

41. On several occasions after Charging Party requested an accommodation, the fleet manager questioned Charging Party's religion by saying he did not believe Charging Party was Jewish.

42. Charging Party was terminated before his replacement mask was provided.

43. The effect of the practices complained of in paragraph(s) 12-42 above has been to deprive Charging Party of equal employment opportunities and otherwise adversely affect his status as an employee, because of his religion, engagement in a protected activity, and opposition to Defendant's discriminatory practices.

44. The unlawful employment practices complained of in paragraphs 12-42 above were intentional.

45. The unlawful employment practices complained of in paragraphs 12-42 above were done with malice or with reckless indifference to the federally protected rights of Charging Party.

**Count I - Disparate Treatment - Religion**

46. The Commission adopts and realleges paragraphs 1 through 45 as if fully set forth herein.

47. Defendant engaged in unlawful employment actions at its Sylacauga, Alabama facility in violation of Section 703(a)(1) of Title VII, 42 U.S.C.§ 2000(e)-2 by temporarily reassigning him to other duties not requiring a respirator while not requiring Charging Party's coworkers to shave and by terminating Charging Party because he refused to shave his beard due to his religious beliefs.

48. Charging Party is Jewish and is therefore a member of a protected class based on his religion.

49. Charging Party was qualified for his position.

50. Defendant intentionally, willfully, and wantonly discriminated against Charging Party because of his religion when it temporarily removed his job duties and when it terminated him.

51. Defendant's reasons for terminating Charging Party were pretextual.

52. Similarly situated employees were treated more favorably than Charging Party.

53. A convincing mosaic of circumstantial evidence exists to prove Defendant's discriminatory intent to terminate Charging Party.

54. Charging Party has suffered injuries and damages as a direct and proximate result of Defendant's discriminatory conduct, for which he is entitled to recovery as set forth herein.

**Count II - Retaliation**

55. The Commission adopts and realleges paragraphs 1 through 45 as if fully set forth herein.

56. Defendant engaged in unlawful employment actions at its Sylacauga, Alabama facility in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3 when it terminated Charging Party because he refused to shave his beard due to his religious beliefs.

57. Charging Party engaged in a protected activity when he opposed Defendant's workplace requirement requiring him to shave his beard and when he requested a reasonable accommodation not to shave his beard because of his religious beliefs.

58. Charging Party suffered a materially adverse employment action when Defendant terminated him.

59. There is a causal link between Charging Party's protected activity and his termination.

60. Charging Party's protected activity was a but-for cause of the alleged adverse action by the Defendant.

61. Defendant's reasons for terminating Charging Party were pretextual.

62. Similarly situated employees were treated more favorably than Charging Party.

63. A convincing mosaic of circumstantial evidence exists to prove Defendant's discriminatory intent to terminate Charging Party for engaging in a protected activity.

64. Charging Party has suffered injuries and damages as a direct and proximate result of Defendant's discriminatory conduct, for which he is entitled to recovery as set forth herein.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from subjecting employees to religious discrimination or retaliation for requesting a reasonable accommodation of their religious beliefs or opposing a workplace requirement that conflicted with his religious belief.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for Jewish people, and which eradicate the effects of its past and present unlawful employment actions.

C. Order Defendant to make Charging Party whole, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Charging Party.

D. Order Defendant to make Charging Party whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 12-64 above, including job search expenses and medical expenses not covered by the Employer's employee benefit plan, in amounts to be determined at trial.

E. Order Defendant to make Charging Party whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful

practices complained of in paragraphs 12-64 above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order Defendant to pay punitive damages for its malicious and reckless conduct, as described in paragraphs 12-64 above, in amounts to be determined at trial.

G. Order Defendant to pay nominal damages.

H. Grant such further relief as the Court deems necessary and proper in the public interest.

I. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Christopher Lage
Deputy General Counsel

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, NE
Washington, DC 20507

*/s/ Marsha L. Rucker*
Marsha Lynn Rucker (PA 90041)
Regional Attorney
Tel.: (205) 651-7045
marsha.rucker@eeoc.gov

*/s/ Austin T. Russell*
Austin T. Russell
AL Bar No. ASB-6418S13J
Birmingham, AL 35205
Tel.: (205) 651-7079
austin.russell@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street South
Birmingham, Alabama 35205